May it please the Court, Counsel, Justin Baxter for Appellants George and Linda Thomas. Your Honors, I'd like to reserve two minutes for rebuttal. With limited time, I would like to take several of our arguments out of order. I'd like to begin with the State law claims and then turn to the Federal claim. And, of course, if the Court has specific questions about any claims, I'd be happy to answer them now at this time. We're not shy. You've probably noticed that. Thank you, Judge Kuda. The first claim I'd like to take up is the District Court's grant of summary judgment on a plaintiff's claim for the threat to enforce a right or remedy that the collector knows does not exist. That's Section K of the Unlawful Debt Collection Practices Act, the UDCPA. The District Court entered a summary judgment based upon an incorrect reading of the Oregon Supreme Court case Porter v. Hill. Porter did not hold that a lawsuit can never violate Section K. In fact, then-Justice Graber, now Judge Graber of this Court, writing on behalf of the majority in Porter, gave an example of a lawsuit that would violate K. In footnote 4 of Porter, the judge, the Court, posited a claim that was required to be brought in arbitration. In that case, the threat or the filing of a lawsuit, the Court suggested, would be a violation of Section K. Another example that I came up with is a case that had already been adjudicated, and therefore a subsequent claim would be barred by res judicata. And in your view, this is a claim that for which there was no proper remedy because? Because the statute of limitations had passed. Isn't that an affirmative defense in Oregon? I mean, you could bring a lawsuit. You might not win. And how far down this road do we go where we're trying to figure out the merits of a particular defense in determining whether or not there's a violation of subsection  It could be an affirmative defense. But in this particular case, it was a permanent bar. That's why we suggested. Why was it not? In fact, I'm a little confused about the whole statute of limitations argument, because as I understand it, the debt was discharged in Chapter 13, so there was a payout and it was essentially satisfied, so there was no debt. And aren't we then looking at Walls v. Wells Fargo? So I didn't understand. I didn't even understand how the statute of limitations argument got in there. Absolutely. We were cognizant of the issue with Walls v. Wells Fargo, and the district court in the summary judgment opinion harshed out the factual underpinnings of the case. It is true that this case was discharged in bankruptcy. But there's no debt, right? Because doesn't the Chapter 13, it's paid out to some extent, and then there's no more debt. So how do we even get to a statute of limitations? Judge Cudito, again, you're correct. As a factual matter, the debt was discharged in bankruptcy. As a legal matter, there was still the last payment to the bank in 1989. There actually were no payments to the bank during the course of the Chapter 13 plan. So the final payment to the bank was in 1989. And so whether they – whether the account was discharged or not discharged, more than six years had run since the date of the final payment. So as a factual matter, that's correct. The account was discharged in bankruptcy. There's a big difference, though, between the debt being gone, it's extinguished, or discharged in bankruptcy, and you still owe money to the bank. And even though six years has run, they can bring an action, and then you just raise as an affirmative defense that, well, the statute has run, you can't enforce it. But that's why we cited to the Court in our Rule 28J letter the case of Lamb v. Young, which is significant because it points out that under Oregon law, the general statute of limitations of six years acts to extinguish the remedy. It – consequently, it's not just, as Judge Fletcher pointed out, an affirmative defense, but it's a permanent bar. It defeats the remedy. And so when the Oregon courts – or rather, when the Oregon legislature enacted the UDCPA, this language, right or remedy, was familiar and had a significant legal meaning. And here, again, because as a legal matter, recognizing Wells and – Wells – Walls v. Wells Fargo, as a legal matter, more than six years had passed since the date of the last payment on this account. So the threat to sue was also known to the bank to be outside the statute of limitations. Okay. Now, you've got lots of arguments and not very much time. So I'm going to move on to your next one. Thank you, Judge Fletcher. Take care. I'll move to the claim under Section N of the UDCPA. Here, again, the district court initially denied summary judgment on – on this claim. But then at the pretrial conference a week before the trial, revisited the summary judgment and then entered the summary judgment based principally on the argument that – that the discrepancy between the amount in 1989 and the amount in the pre-lawsuit letter, the collection letter in 2004, was not enough to bring a claim. And respectfully, we submit that a juror – a reasonable jury could conclude that the discrepant amount was, quote, other charges. But that statute says basically you're not supposed to say as a part of the threat, oh, you better pay up now or I'm going to increase charges against you because you don't pay. That's not what happened here. They just gave an amount that was off by about $20. That's correct. It was a different – it was a higher amount. It was higher by roughly $20. Correct. And it was also listed as the, quote, current balance. Correct. And finally, it was coupled with this threat to sue. We're going to sue you if you don't pay. But it didn't say, and if you don't pay now, we're going to take it out of your hide later by increasing the charges as a result of your not paying. I agree with Your Honor's description of the latter. But, again, I submit that that raises a question for the jury as to whether they were attempting to collect other charges not permitted and, therefore, should have been submitted to the jury and not dismissed on summary judgment. But there's no evidence in the record that that was anything other than a mistake. Is that accurate? Through discovery, through any process, there's nothing in the record to show that was intended in any way as an increase in the fees or as a fee of some sort. Explicitly, I think I would concede that what the particular calculation came from is not in the record. But we do know implicitly what the exact amount of the principal was in 1989. That was the lower dollar amount. So the jury was at least entitled to consider whether that increased amount reflected other charges. And applying the, you know, consumer protection purposes of the UDCPA, those statutes have historically been ---- Did you put in any proof that this was something other than a mistake? Did you put in any proof that they were trying to collect interest or other charges or fees? No, Judge. We did not. But that's the only thing that the statutes addressed is interest or other charges or fees. That's correct. Again, the argument rests upon the implicit contention that the principal was set in 1989. Because as a factual matter, under the facts of this particular case, the dollars were set. This is not the run-of-the-mill case where there could have been other charges. If your argument runs, then, this part of the statute would be violated any time the And it is more than the amount actually in the record that is owed. That means it ends automatically violated in that circumstance under your argument. I understand Your Honor's contention here. And I'm not arguing for that, for that ruling. Under the facts of this case, I'm submitting that in this particular case, the principal was set and known, and the increased amount reflects something that the jury could have found was, quote, other charges. Okay. The final claim I'd like to address with my remaining time is the Federal Fair Credit Reporting Act claim under Section 1681B for an impermissible access of Mr. Thomas's    It was conceded by the bank. It's conceded by the bank that the purpose of obtaining Mr. Thomas's credit report was for the collection of the debt. The question, then, is, must the — where the underlying purpose is not permitted, then is the purpose permissible? What underlying purpose is not permitted? Well, here they were, again, attempting to collect the debt. They conceded that. And — but we know from the record that this debt was uncollectible. Here we don't have the Walls issue. The Walls opinion was limited to the FDCPA, the Fair Debt Collection. We know from the record that it is uncollectible. At that time, they appeared to think that it was collectible. There are a lot of people who say, yeah, yeah, I heard — I got your telephone call. You say I owe 3,000 bucks. I don't owe you the money. So, okay. And it may turn out that it is uncollectible and it's not owed. But under your argument, does that mean if, in the end, it turns out it's not owed, they've automatically violated the access to the credit report provision because it turns out that it wasn't owed? I would not go so far. The rule that I am arguing for is simply on the facts of this case, where the bank knew. Where the bank was actually a party to the bankruptcy. Where the bank's records were actually better than Mr. Thomas' and they knew the date of the last payment. They actually had better information than Mr. Thomas that this account was uncollectible. I'm not sure they had better information than Mr. Thomas. I mean, it was Mr. Thomas' bankruptcy, after all. Agreed. And the bank deals with lots of customers. He probably deals with — Mr. Thomas probably only dealt with one bankruptcy. I don't dispute that. Again, here, I think the point that I'd like to make for court is more that there, again, is an issue of fact for the jury. Now, here's a problem I've got with this case. I'm not sure it's directly relevant to the legal questions. If he had said not only, okay, I didn't fire — I didn't go through Chapter 7, which is a denial but not full information. But he said, you know, but I did go through Chapter 13, none of this would have happened. No doubt. And I want to be — So why doesn't he say, well, you know what, the story is — I'm not merely going to deny the information you got, but I need to actually tell you what happened. Why doesn't he say — He does. When? ER 96B. The letter, I will grant you — That's a page number. I asked you when. He says it in November of 2004. Yeah, yeah, late. Well, this is before the — this is before the collection letters start coming, and it's before they pull his credit report. And it's important. I want to — I definitely want to make sure that the Court is aware that, look, the letter that Mr. Thomas sends to the bank is long, and it's in all caps, and it's difficult to read. But I don't want it to be lost on the Court of the Record that Mr. Thomas, you know, was forthright about his dispute, and he did say in the letter, this account should not be on my credit report because of, one, it was more than 10 years old, and, two, because of bankruptcy. He wasn't articulate, but he wasn't trying to hide the ball. Actually, you gave me the page number. I probably better have another look at that letter. Sure. Which page is it on in the ER? I'm looking at — I'm sorry, Judge, I wrote down — You had it in your hand. I gave you the reference to the threat to sue letter, but I did have his dispute letter written down. I think, actually, it's in the supplemental. Well, you look it up while the other side is talking. I may be able to grab it quickly. You've got it.  96A. Say again? 96A. 96A? Okay, I got it. Okay. Okay. My thanks to my esteemed counsel, opposing counsel. So — You see, this is the letter that I'm saying. You know, he says there's no Chapter 7. Yeah, there never was a Chapter 7. There was a Chapter 13, but he doesn't mention the Chapter 13. Again, it's not a great letter, but the next sentence, Your Honor, is it, the account, should have been removed from my credit report after 10 years for a closed account and bankruptcy. I'll concede it's not a perfect letter, but he wasn't trying to be cute or game the system. He tried to — he was forthright. Okay. Let me ask you one last question that, again, may not be strictly relevant to the way this has come out. Do you do these fair credit report cases a lot? Is this a staple of your business? Is this the first one you've seen? Where are you in this business? I do a number of these cases, Your Honor. Okay. Why don't we hear from the other side, and we'll give you a moment to respond. Thank you, Judge. May it please the Court, William Larkins for U.S. Bank. I'll respond pretty much in the order in which opposing counsel addressed the arguments, starting with the Oregon Act. The overarching theme of the Act, and the Porter case says so, is that it's meant to deter abusive or coercive tactics used while a debt is being collected. Porter has held since — well, Porter was issued in 1992. It's not a violation of subsection K to attempt to collect or even sue to collect a nonexistent debt. If the Court got that wrong, the legislature's had about 17 years to set them straight, and the pro car care case in 2005 didn't narrow Porter. It just followed it in a context where somebody sued for more than they were owed. Under subsection M, which counsel did not mention, that requires, with regard to the $19.75, it requires a representation made, again, while in the course of collecting the debt. Judge Mosman said in granting summary judgment there simply was no evidence of a representation. Going back to K, it seems to me Mr. Baxter's main argument is the statute of limitations argument, that it was uncollectible because of the statute of limitations. The last collection on this payment was 1989 or so. So how do you respond to that? Well, Your Honor, my first reaction when this case came up was the question you asked already, isn't the statute of limitations a defense? And the — I don't understand the conceptual difference between a nonexistent debt, which is what Porter was addressing. The lawyer discovered in sending the letter demanding $26,000 he got a countersuit and discovered he only was owed three. And the court held that K simply didn't address or didn't sanction, didn't punish suing to collect a nonexistent debt. Now, I think the logical extension of the argument that the statute had run is this doesn't exist anymore. I don't know conceptually how to separate those. I don't know if that answers the Court's question. You know, I've got a question about the statute of limitations. I mean, yes, the statute of limitations is ordinarily a defense that's put forward. It's a waivable defense and so on. But the example given by then-Justice, now Judge Graber of arbitration, well, often arbitration is waivable and it's also a defense. You know, okay, so you're supposed to arbitrate, but that's okay. I'm going to waive that clause. I have trouble actually figuring out the distinction under Oregon law between a remedy that's not available and a remedy that is available because if there's a good statute of limitation defense and it's made, the remedy is not available. Is the distinction that it's really obvious that you've got a lousy lawsuit and it's a really stupid defense or that it's a plausible defense? I mean, I'm just trying to figure out Oregon law here, but I'm having trouble. Well, I think one way to approach that, Your Honor, is if you use the arbitration example that there's a bar in effect. But it's waivable. Yes. And sometimes if you read the ---- I mean, I just drafted an opinion out of an entirely different area of law where it's highly arguable whether the arbitration clause applies or doesn't apply. Well, this ---- in context of these facts, I think the way of ability looms large. Was the bank under these circumstances attempting to do something abusive or coercive where it had no right to seek the money? I mean, the bank didn't file suit here. Yes, but I have to say that a statute of limitations defense, if not waived, is a pretty obvious defense. I mean, it's been a long, long time. And the longest statutory period you've got available to you is six years. Well, and we're well outside the six. According to the record ---- I don't think your client's been insane or there's any other reason to toll the statute. Yes. Well, I guess, Your Honor, my point is to rest on the authority that we have in Oregon on this. I don't know where the Supreme Court would go next with Porter. If the idea is one way or another this debt is non-enforceable, non-existent, barred, whatever the language is, the only guidance we've got is from that case law. I mean, I have to say I'm inclined to agree with you, but I'm actually having trouble drawing an analytic line between arbitration, that's a remedy not available and you can't bring suit if there's an arbitration clause, and statute of limitations defense when it's dead-bang obvious that there's good statute of limitations defense. Well, I don't think on this record it was dead-bang obvious, which actually would get to Judge Mossman's rulings on the debt collection claim. And so I'll ---- I just was wondering if you could address if the debt was extinguished in bankruptcy, why we aren't bound by Walls v. Wells Fargo. How does it come back? Well, we actually moved for summary judgment under Walls saying the whole matter was preempted because their original complaint, which is in the record, asserted that there was essentially a violation of the bankruptcy stay. Now, if I'm getting your question right, Your Honor, in footnote two of the reply brief, appellants say we're not relying on the fact that this was barred by a bankruptcy discharge because they're steering clear of Walls. They didn't want to be in bankruptcy court arguing that it was a violation of the stay. They wanted to be in district court hoping to get to a jury. And so the rise or fall on the statute of limitations was when we get to the permissible purpose for the ---- I don't understand how a statute of limitation runs on collecting a debt that's been extinguished. I mean, there is no statute of limitations for collecting that debt if it's been extinguished. But maybe I'm just keeping you from your next point. I'm sorry I'm not answering the question more head-on, Your Honor. The record is that that wasn't paid. There was a bankruptcy discharge, I believe, in 1995. But at the time you're trying to collect, you don't know about the discharge, or at least your right hand doesn't know about the discharge. Maybe somebody in the bank somewhere deep in the record knows about the discharge. It's in the record that somewhere in a computer system was some reference to the Chapter 13. And also in the record is when Mr. Thomas wrote the letter about no Chapter 7, the bank personnel actually noticed a reference to Chapter 13. They were confused about the 7 and the 13. They tried to verify this through public records, couldn't find the bankruptcy. And that led to the presumption, whether true or not, that they could try to collect. Still, I'll finish up on the Oregon Act under Subsection N. This was very clear in the colloquy between Judge Mossman and opposing counsel. This 1975 was never segregated out, and there was no evidence that it was ever added or threatened to be added or sought to be collected in the context of collecting a debt. I'd like to touch briefly on the exclusion of the expert witness testimony offered through deposition. I want to clarify, dispel the notion that that was a perpetuation deposition of Mr. Lefebvre. It wasn't. There's nothing in the record to indicate that it was. I didn't find – what's in dispute here is the video testimony, the videotape. Is that correct? That's right, Your Honor. Because I didn't find the videotape in the excerpts or in the record, I understand. Is the videotape, is your understanding that it's lodged in the district court record? I'm not even sure it is, Your Honor. I don't – it's not in the record before this Court. Okay. So it's not in the record before the Court. And then you said in your brief that the report of Lefebvre – how do you pronounce his name? I think it's Lefebvre. Lefebvre was withdrawn by opposing counsel. So is that in the record before us, or is that also not in the record? Well, it was withdrawn at the pretrial conference in response to a hearsay objection, and I wish I had the citation to the excerpt. But in the excerpt of record, the minute order of the pretrial conference, it says 52 withdrawn. It was Exhibit 52. So does that mean that's not in the record before us either? Well, it's in the – it's bound up in – I understand it can be in the excerpt, but it can't be in the record. I don't believe it is in the record properly, Your Honor, because it was withdrawn. And that gets to the sort of self-authenticating problem that they had along with Mr. Lefebvre. The idea was, and it's recited in the appellant's brief, that it's because of all of his experience and expertise that his opinions are inherently reliable. You'd have to have a record of what that experience was to even begin that analysis. And Judge Mossman correctly said, well, the opinions themselves have to be passing muster under the subsections of Rule 702. He – the judge correctly said that testimony is too anecdotal. He said that if he had attempted to do a Rule 403 excision of all the inflammatory stuff, there would have been nothing meaningful left for the jury to consider. And finally, on the prejudice aspect of that, of the exclusion, the appellant's brief mentions that Mr. Lefebvre died in March of – February of 2007. We'll accept that for purposes of this. Judge Mossman's summary judgment written opinion came out in March of 07. There was then a scheduling conference.  There were months and months and months for the plaintiff to approach the court and say, our expert died, and not until the judge's ruling excluding the testimony was there any attempt to offer an alternative expert. On the granting a judgment not – judgment as a matter of law on the impermissible purpose matter, this is not a case where the judge made that decision without hearing the plaintiff's case. This was after the plaintiff rested, and the judge said you don't have the foundation there for a jury to take the sort of scraps of information that are in the record and be able to make a decision how to evaluate whether pulling the credit report was for an impermissible purpose. The judge pointed out that plaintiff's counsel's knowledge or opinion about how the FCRA works is not a substitute for evidence for the jury. And he said, for example, you're talking about a statute of limitations problem being some kind of an indication that pulling the report was not permissible, but the jury doesn't know that. There's no – there's no framework for the jury to make that decision, and Judge Mossman did acknowledge that the exclusion of Lefebvre's testimony might have had some impact on that, but he said you can't just leave the jury to speculate about why this might have been improper. And there's no doubt the bank was trying to collect a debt. Counsel mentioned that in his opening remarks. The whole underlying premise of the state claim is that there was debt collection going on. There's not a scrap of evidence in the record that anything other than attempting to collect a debt, even mistakenly, that there was no nefarious motive, nothing like that. Let me talk about attorney's fees. You obviously prevailed partially on your motion for fees. I think you got $45,000. That was the award. That's right. And one of the criteria applied by the district judge in granting fees was that the claims asserted by Thomas were unreasonable. I'm having a little trouble with that. Losing, of course, is not the same thing as unreasonable. And I'm not sure that the argument about statute of limitations is unreasonable. In my own mind – I'll just telegraph my punch. I think you went on it, but I'm not sure it was a totally unreasonable argument. Also, the argument about, listen, there was more assessed in the letter than was actually owed, I'm not sure that's an unreasonable argument. The district judge in his fee order says, well, that's a loser because it's de minimis. Well, I don't think – I think that's an invalid ground for holding against him. So I'm having trouble agreeing with the district judge that the state claims were sufficiently unreasonable as to warrant an award of fees against Thomas. Can you help me out on this? Well, I think it's – Maybe help yourself out. Okay, all right.  Well, I agree with you that the mere de minimis amounts of the claims does not make him de facto unreasonable. I think that is probably a flaw in his overall analysis of the whole list of factors.  I would step back from that list of factors and say the Oregon legislature did decide there was some price to be paid for being the unsuccessful claimant if the judge or her discretion ran through. Is there anything in the evidence that tells us that whether the – I mean, there are such people who they just – not just the lawyers who represent them, but the people themselves, they just love – they've just kind of stumbled upon fair debt collection practices suits, both under federal and state law. Is there any evidence in the record to suggest that Thomas has made these such people? No. This is their only lawsuit, as far as we're aware, ever brought under this. Yes, I have no – nothing in the record that would suggest that about the plaintiffs. Right, so any deterrence we're talking about is generalized deterrence to others, not specifically to them. I believe so, yes. You note in your briefs that even if the objectively unreasonable was questioned, that the other bases, the court, based its award of attorney's fees would carry the day. Can you explain that? Well, I should probably grab a list of the factors, Your Honor, but the intent there was to say that you don't – that the – under the Oregon statute that one factor or another is determinative, and the judge, first of all, goes through the analysis, am I going to make the award, and then goes back and looks at the same factors plus some others about how big an award do I want to make. I don't think it was an abuse of discretion to – if you look at his overall analysis and the thoughtfulness with which, frankly, he really whacked our requested fee, trying to make some compensation to the bank and balance that with a deterrent effect, I just don't know that the basis is there. I don't believe strongly it's not there to say he abused his discretion. I understand the position of the bank.  I'm not talking about this when there are a lot of lawsuits under Fair Debt Collection Practices Act and under the Clovis State statutes. I mean, there's a bar out there that's just out to get you and so on. On the other hand, these are people who've been through bankruptcy once. I suspect $45,000 is a lot of money to them, and I'm not sure that the lawsuit was on its face unreasonable.  Well, I think under the statutes, Your Honor, it's being a loser is among the factors the judge can consider, and he did very explicitly recognize their modest income. It was not like he didn't know that. He paid attention to that and mentioned it. Okay. Thank you, Your Honors. I thank both sides for you. Oh, I'm sorry. You got a rebuttal. Let's start with Timmons. Thank you, Your Honor. I'd like to respond to some specific questions that Your Honors had raised. First, Judge Seabright, you had asked about the issue of statute of limitations and how that affects how that acts in consumer cases. We have some guidance from other federal courts applying statute of limitations to the Fair Debt Collection Practices Act. That's the Kimber and Martinez cases that we cited in our brief. Because the policy of the FDCPA is to protect consumers and because the businesses are in a better position to understand statute of limitations than a lay consumer, the FDCPA has been interpreted to preclude. It's a violation of the FDCPA to file a time-barred lawsuit, and I think it's analogous here to threaten a lawsuit. Counsel's comment was that there was no abusive or coercive tactics, but in my experience the threat to file a lawsuit is perhaps the greatest coercion for a consumer. And then Judge Ikuda, you had asked again about whether we reach the statute of limitations issue because it had been discharged in bankruptcy. And I think the answer here is that there are multiple reasons why they couldn't collect. One happens to be barred by Walz, but another, the statute of limitations, is not. Can you address this Lefevre's testimony and whether we have anything before us on which we could rule? Correct. And that was the next issue on my list. I think as a postural issue, the factual matter, the DVD, the video was withdrawn as an exhibit in light of the court's ruling on the Daubert challenge to exclude the witness. So it was removed from the trial court's list of exhibits, but it is still before the court as part of the record for the Daubert motion. And the district court isn't lodged with the district court because I believe we requested it and they didn't have it. I think the video never reached the court's file because the district court had already ruled on the Daubert challenge. And the report that your opposing counsel says was withdrawn, is that withdrawn also not properly before us? No. Again, I think that it was withdrawn as an exhibit as a result of the ruling on the Daubert challenge, but it is part of the record as, well, our response to the motion to exclude the witness. So I think that is properly before the court. You said it was included where? In what document? Our response to the motion to exclude the expert testimony. And finally, Judge Fletcher, I just would like to try to appeal to you again on the statute of limitations issue. This is a case where the bank actually knew the date of the last payment. This is perhaps a special case because of the knowledge that the bank had. But these consumers did not go out looking for a lawsuit. This account should not have been on Mr. Thomas' credit report. They should not have been trying to collect this account. This was an account that was long in his personal past, and I would just ask the court to ---- So you're saying when the left hand knew, the right hand didn't know, but if we're talking about the bank as a whole, the bank knew it had been paid? The bank knew. Okay. Thank you, Your Honor. Thank you. Thank you very much for your useful arguments. Our last case on the calendar this morning, Thomas v. U.S. Bank, is now submitted for decision. We're in adjournment until tomorrow morning. Thank you. Thank you very much.
judges: Fletcher W. , Ikuta, Seabright